Drake v. State.

WILLIAM C. DRAKE, PLAINTIFF IN ERROR, V. THE STATE OF NEBRASKA, DEFENDANT IN ERROR.

1. **Nuisance:** HOUSE OF ILL-FAME: EVIDENCE. To authorize a conviction under sec. 210 of the criminal code, for permitting a house to be used as one of ill-fame, or for purposes of prostitution, it must be shown: That the house was of ill-fame, in fact, or in other words, a house resorted to for purposes of pros-

titution; that the prisoner was the owner, or had control of the house, and that he knowingly permitted it to be occupied as a house of ill-fame.

2. ——: ——. The bawdy character of the house may be shown by its general reputation and that of the persons frequenting it, together with other facts and circumstances which lead satisfactorily to that conclusion. It is not necessary to show particular acts of prostitution.

3. **Grand Jury.** After the discharge of the regular panel of grand jurors, the court may at the same term, if it shall be deemed necessary, order a new one to be summoned by the sheriff, under sec. 405 of the criminal code.

4. **Clerk:** SIGNATURE: OFFICIAL TITLE. It is not a valid objection to a 'jury so called together that the clerk omitted his official title to his signature to the venire.

5. **District Judges** may hold courts for each other.

ERROR to the district court for Lancaster county. Tried below before GASLIN, J., in absence of POUND, J.

*L. W. Billingsley* and *James E. Philpott*, for plaintiff in error.

Proof that the house was of ill fame must be *by facts*, not fame. *State v. Boardman*, 1 Am. Crim. Rep., 351. 2 Bishop Crim. Proc., § 91. *Caldwell v. The State*, 17 Conn., 467. Selection of grand jury. Comp. Stat., 618, 726. *McElwoy v. The State*, 9 Neb., 157. *Burley v. The State*, 1 Id., 397. Right of GASLIN, J., to hold term. Comp. Stat., 201. *Ellis v. Karl*, 7 Neb., 385.

*Isaac Powers, Jr., Attorney General*, for the State, cited: *State v. Brunell*, 29 Wis., 435. *Candy v. The State*, 8 Neb., 485. *Nuckolls v. Irwin*, 2 Neb., 63.

LAKE, CH. J.

The plaintiff in error was convicted under sec. 210 of the criminal code, for permitting a house, of which he was the owner, to be "used and occupied as a house of ill fame."

Drake v. State.

The first objection made to the conviction in the brief of counsel is, that the evidence was insufficient to warrant it. In this we think counsel is mistaken. The evidence to establish the guilt of the accused was overwhelming. It consisted not only of the uncontradicted testimony of a large number of credible witnesses residing in the neighborhood of the house, that it was of ill fame during the time laid in the indictment, but that it was frequented almost exclusively by persons of bad repute of both sexes for evil practices, including that of unlawful sexual intercourse. We will not quote from the evidence, but simply say of it that, from a careful perusal, we are satisfied it fully supports the verdict of guilty.

Perhaps the principal point urged in support of this objection deserves a more particular notice. That point is, that in prosecutions of this nature the evil character of the house must be established by proof of facts, and not by its reputation alone. While we do not think the evidence in this case open to such criticism, perhaps it is best that the rule be stated as we understand it.

Under this indictment the prosecution was required to show three principal facts. 1st, That the house was of ill fame, or, in other words, a house known to be resorted to for the purposes of prostitution. 2d, That the prisoner was the owner or had control of the house. And 3d, That he knowingly permitted it to be occupied and used as a house of ill fame.

Conceding that the prisoner was the owner of the house, and knew of the use to which it was put, the further fact that its reputation in the neighborhood was that of a bawdy house, or one of ill fame, would not sustain a conviction. But there must be added to these facts the additional one that it was really a house of ill fame—a house resorted to for acts of prostitution.

To establish the bawdy character of the house, its general reputation and that of the persons frequenting it were

competent evidence. It was not necessary to show partic-
ular acts of prostitution in the house. *State v. Brunell*, 29
Wis., 435. It was enough that, in addition to the bad
reputation which the house was shown to bear, notwith-
standing no family lived in it, some of its rooms were sup-
plied with beds and some little furniture, and the walls
hung with indecent pictures; that it had a bar at which in-
toxicating drinks were sold, and was the resort, especially
on Sabbath days and in the night-time, of men and women
of lewd and lascivious character, many of the women being
known prostitutes and keepers and occupants of places of
ill fame in the city of Lincoln, who, while visiting this
house, indulged in drunken revelry and licentious practices
fit only for a brothel, which the evidence of what transpired
there clearly shows it to have been. *State v. McDowell*,
Dudley (S. C.), 346. 3 Greenleaf on Evidence, § 186.
*Commonwealth v. Stewart*, 1 Serg. & Rawle, 342. *Caldwell
v. The State*, 17 Conn., 467.

Objection is made to the grand jury which found the in-
dictment. Fault is found with the mode of selection, and
generally that they were an unauthorized body. It appears
that the regular panel for the term had finished their work
and been discharged. That later in the term the presiding
judge, by order, directed the sheriff "to summon without
delay sixteen good and lawful men, residents of said Lan-
caster county, having the qualifications of grand jurors," to
appear as a special grand jury. This order was executed,
and by the grand jury thus brought together the indictment
was presented. This method of selecting a grand jury is
specially authorized by sec. 405 of the criminal code, which
provides that: "After the discharge of the grand jury it
shall be lawful for the court, when it shall be deemed nec-
essary, to order the sheriff to call together a new grand jury,
from the bystanders or neighboring citizens, of sixteen good
and lawful men, having the qualifications of grand jurors,
who shall be returned and sworn or affirmed, and shall

Drake v. State.

proceed in the same manner in all respects as provided by law in respect to grand juries." Whether a necessity exists for calling a grand jury after the regular panel have been discharged, is a matter left entirely to the discretion of the district court. If the power of ordering one be exercised, the necessity for so doing will be presumed.

The objection that the clerk in signing the venire omitted to give his official character is merely technical. When the omission was discovered, the court very properly permitted an amendment, which entirely cured the nominal defect. But even if there had been no venire, if the record showed that the sheriff proceeded upon the mere verbal order of the presiding judge, the jury would, nevertheless, have been a legally constituted body.

Finally, it is objected that Judge GASLIN, who presided in place of Judge POUND, the judge of that district, had no authority to act. This point is without the least merit whatever. Judge GASLIN was on the bench at the instance of Judge POUND, and constitutionally there. The Constitution, Art. VI., § 12, declares that: "The judges of the district courts may hold courts for each other, and shall do so when required by law." The case of *Ellis v. Karl,* 7 Neb., 381, is not in point as an authority. In that case, Judge POUND in his own district allowed an injunction in a case brought in another. This we held he had no authority to do without a showing that the judge of the district where the action was brought was for some reason unable to act in the matter.

We discover no error in the matters complained of, and the judgment is affirmed.

JUDGMENT AFFIRMED.