DANIEL McLARREN, Appellant, *v.* C. A. SPALDING,
Respondent.

Where the answer of the defendant, on a claim for rent in arrear, "denies that
he is indebted to said plaintiff in manner and form as said plaintiff has above
thereof complained against him; it is substantially the plea of *nil debet* at
common law, and under it the defendant may prove an eviction.

The 46th section of the Practice Act, which enacts, that the answer of defend-
ant shall contain, in respect to each allegation of the complaint controverted
by the defendant, a *general* or special denial thereof, &c., provides for the use
in pleading, of the general issue at common law, without confining parties to
the particular form of language belonging to such pleas respectively—but
allowing a general denial in plain language to be equivalent in its effect, to
any general issue necessary to meet the subject-matter of the action.

The effect of this general denial is, that any matter can be given in evidence,
which shews that plaintiff never had any cause of action, and most matters
in discharge of the action.

And where such general denial is the equivalent of the plea of *nil debit*, eviction,
payment, release, &c., may be given in evidence.

Plaintiff sued for rent, claimed upon a lease to defendant of a store in the City
of Sacramento, and certain stands for the sale of goods, which were erected
upon the side walk of a public street of the city; the latter were removed
shortly after the commencement of the lease, by order of the City authorities,
and defendant plead this removal in defence of the claim for rent. Held, that
the removal was no eviction; that the right leased, was a mere privilege, held
at the sufferance of the City, of which the position of the stands upon the
street was notice; and that defendant took the lease, subject to the risk of
removal.

The lessee should have protected himself by covenants.

APPEAL from the Sixth Judicial District, for the County of
Sacramento.

The complaint sets forth a lease, dated the 14th day of May,
1851, by which the plaintiff leased to defendant "all his right,
title and interest, in and to all the stands outside of the Mansion
House, and situated at the corner of I. and Front streets, in the
City of Sacramento, as well as the store in said Mansion House,
now occupied by C. A. Spalding (the defendant,) for the term of
six months, from the 10th of May, 1851, for and in considera-
tion of $3600, payable in five monthly payments of $720 each,

commencing on the 1st June, 1851, to be paid in advance; defendant to have the preference and refusal of the stands and store, at the expiration of the lease, provided the plaintiff should obtain a renewal of his lease of the Mansion House; and avers that defendant was indebted to plaintiff on the 1st of September, 1851, and still is, in the sum of $720 for rent, with interest, and therefore brings suit, &c.

The defendant comes and defends the wrong and injury complained of, &c., and denies that he is indebted unto the said plaintiff, in manner and form as said plaintiff has above thereof complained, and of this puts himself upon the country.

Five actions upon the above lease, for the several payments of rent as they became due, were brought by plaintiff against defendant, and by agreement of parties, were consolidated on the 20th January, 1852—the testimony to be applied to all, and judgment given as upon one action.

The Court, who tried the cause without a jury, found for the plaintiff $500, with $25 damages, and the costs of said action, consolidated as aforesaid, and gave judgment accordingly. And plaintiff appealed.

The bill of exceptions shows that, after the defendant had read his lease, he rested his case. That defendant then adduced evidence to show that, about the 20th May, 1851, he was directed by the Marshal of Sacramento City to remove the stands described in the lease by order of the City Councils; and after remonstrating and petitioning the city for leave to continue them, was obliged to remove them about two weeks thereafter. Defendant admitted the occupation of the store mentioned in the lease for the full term; and proved that it was worth from $75 to $100 per month; and admitted the occupation of the stands till removed as above; and proved payment to plaintiff of $300 and an offer to pay $100 more in full satisfaction of plaintiff's claim before suit brought, which plaintiff refused. The stands were upon the sidewalk of the street.

In the course of the trial, the defendant offered in evidence certain depositions, to which plaintiff objected; 1st. That the said depositions are irrelevant; 2d. That the matters and things therein contained are not responsive to the issue. The Court overruled the objections; and plaintiff excepted.

The depositions thus objected to and received, were in proof of the facts found by the Court as above stated.

Plaintiff relies upon the following grounds for the reversal of the judgment. 1st. The Court erred in its construction of the legal force and effect of the document marked A. [the lease], which forms the foundation of the plaintiff's suit; 2d. The Court erred in receiving improper testimony, and such as was not responsive to the issue between the parties.

No briefs are found on file.

Justice HEYDENFELDT delivered the opinion of the Court; Chief Justice MURRAY concurring therewith.

This is an action for rent due on lease.

The answer of the defendant is, that "he denies that he is indebted to said plaintiff in manner and form as said plaintiff has above thereof complained against him, &c."

This is substantially the plea of *nil debet* at common law, and under it the defendant proved an eviction. The question is here made as to its sufficiency under our Practice Act, to admit the defence relied on. As this is the first case which has properly come before us, requiring a construction of that act, it is essential that it should be well considered.

Our rules of decision as to remedies as well as rights, is the common law of England, if unaltered by statute. In a considerable measure this has been done, but while our code of practice has aimed at great amelioration in reference to forms, it has varied but little, if any, the substance of the pre-existing remedial law.

The 46th section of the act referred to enacts, "The answer of the defendant shall contain, 1st, in respect to each allegation of the complaint controverted by the defendant, a general or specific denial thereof, &c.; 2d, a statement of any new matter constituting a defence or counter claim, in ordinary and concise language."

Now according to the common law practice, a defendant might plead in assumpsit the general issue, or he might plead specially any matter of defence, many of which might be given in evidence under the general issue. The general issue was in effect a gene-

ral denial of each allegation in the declaration, and it invariably put the plaintiff to the proof of all of them.

So in the action of debt was the general issue of *nil debet*, which had about the same effect and influence as the plea of non assumpsit in assumpsit; it was a general denial of each specific allegation of the declaration.

It seems clear to me from this review, that the statute could not have more distinctly provided for the use, in pleading, of the general issues at common law, even if it had indicated their propriety by using the common law terms by which they are designated. It did not do so, because its object is that parties shall not be confined to the particular form of language belonging to the various general issues respectively, but allowing a general denial in plain language, to be equivalent in its effect to any general issue which, at common law, would be necessary to meet the subject-matter of the action.

Nor has this sensible reform altered the rule in relation to the admissibility of various defences under these pleas. The effect of a general denial by virtue of the code of practice is the same, in regard to the admission of defences under it, as is that of the plea of non-assumpsit by the old practice. Any matter may be given in evidence, which shows that the plaintiff never had any cause of action, and most matters, even in discharge of the action.

And under the general issue, *nil debit*, the defendant may give in evidence eviction, payment, release, and various other matters of discharge.

Our conclusion, therefore, is, in reference to the first point here raised, that the evidence of eviction was properly admitted under the general denial which constitutes the answer.

The plaintiff leased to the defendant a store, in the City of Sacramento, and certain stands for the sale of goods; which stands were erected on the side walk of the public street of the city. The lease was for six months, at a specified sum, payable monthly. It seems, from the evidence, that the stands were of much greater value than the store, and were the main inducement to the lease. Shortly after the lease they were removed by order of the city authorities; and this removal is pleaded in

33

defence of the action for rent, and was held to be good, by the district judge.

We have come to a different conclusion. This does not present a case of eviction. The right which the defendant purchased or leased, was a mere privilege, or franchise, held by his lessor, and afterwards by him, at the sufferance of the city.

As it was a public street, and the stand was an obstruction to the street, the defendant was fully chargeable with notice of its character, and took it, subject to be removed at any moment by the action of the city. He therefore took it with that risk, and as he might have largely profited by its continuance, so he must suffer the loss of its removal.

This is certainly no harder than the doctrine which compels a tenant to pay rent, although the house, the main inducement to the lease, is destroyed by fire. The able counsel for the defence says, a tenant may, in such a case be protected, by inserting in the lease what is called the fire clause; but that is no answer; for the defendant here might have protected himself by a clause defeating the lease, in case of the removal of the stand; and as he knew that it was subject to removal and did not do so, the presumption is, that he assumed the risk, and must bear the loss.

The judgment is reversed, with costs, and the case remanded.