## POTTS-THOMPSON LIQUOR COMPANY v. CAPITAL CITY TOBACCO COMPANY.

1. A motion, in the nature of a special demurrer, to dismiss a petition came too late at the trial term.

2. To constitute an eviction which will operate as a suspension of rent, there must be either an actual expulsion of the tenant, or some act of a grave and permanent character done by the landlord with the intention of depriving the tenant of the enjoyment of the demised premises.

   (a) The granting, upon the petition of the landlord, of an order temporarily restraining the tenant from removing his goods beyond the limits of the State, and the appointment of a temporary receiver for all the assets of the tenant, which receiver took possession of the rented storehouse and a stock of goods belonging to the defendant, contained therein, and held possession of both for several weeks and until, upon the hearing, the restraining order and the appointment of the receiver were rescinded, did not amount to an eviction of the tenant by the landlord, it being alleged in the petition as amended that a portion of the rent was due and unpaid, and that the tenant was insolvent and had declared his intention to repudiate the rent contract. Such proceedings did not show an intention on the part of the landlord to deprive the tenant of the enjoyment of the rented premises.

3. The enactment of the general prohibition law did not of itself have the effect of absolving a tenant from the payment of the agreed rental of a storehouse rented for use in the liquor business.

4. To an action ex contractu damages sounding in tort, can not be pleaded in defense, where neither the insolvency nor the non-residence of the plaintiff is set up.

5. Where there is no attempt to brief the evidence in a case brought to the Supreme Court, questions depending on the evidence will not be decided.

6. The rulings above announced are controlling of the case, and none of the assignments of error requires a reversal.

FEBRUARY 27, 1912.

Complaint. Before Judge Bell. Fulton superior court. August 26, 1910.

J. J. Goodrum Tobacco Company brought an action against Potts-Thompson Liquor Company, both parties being corporations. Pending the suit the corporate name of the plaintiff was changed to Capital City Tobacco Company. From the petition, and a copy of a lease contract attached thereto, the following facts appear: On July 26, 1906, the defendant leased from J. J. Goodrum Tobacco Company a described storehouse in the city of Atlanta, for the term of five years from October 1, 1906, the defendant agreeing to pay a total rental of $37,500, the sum of $625 being payable monthly in advance. The rental was paid up to and including December 1,

1907. The suit was filed, June 1, 1908, for the recovery of the rental due January 1, February 1, March 1, and April 1, and also for damages in a given sum for a breach of the lease contract by defendant in abandoning the premises. There was no denial by defendant that the copy attached as an exhibit to the petition was a true copy of the lease contract signed by Henry Potts, who in doing so undertook to represent defendant; but his authority to do so was denied by defendant. A motion by defendant, made at the trial term, to dismiss the petition, was overruled. At the trial, on motion of plaintiff, the court struck parts of the answer and disallowed amendments offered by defendant to the answer. The portions of the answer so stricken, and the amendments offered, set up in effect the following: If the lease contract forming the subject of this suit was valid and binding upon the defendant (which is denied), the defendant has been released from all obligation thereunder, by reason of a breach by the plaintiff of the covenant for peaceable possession and quiet enjoyment of the premises, for the following reasons: The General Assembly of Georgia, in August, 1907, enacted a law prohibiting the sale or manufacture of intoxicating liquors within the State after January 1, 1908, and making it unlawful to keep such liquors in any place of business. Defendant, in order to meet the requirements of this law, had rented a place of business in Chattanooga, Tennessee, and was removing thereto its stock of liquors for the purpose of there continuing its business of selling liquors. Defendant was neither seeking, threatening, nor intending to remove from this State its other assets, which were of the value of some $40,000 and consisted largely of cash and book accounts; nor was it seeking, threatening, or intending to dispose of certain real property of large value owned by it in this State. Defendant was solvent, and was in the enjoyment of a valuable good will and a prosperous wholesale and mail-order trade that did not depend upon its location in Atlanta, this State. In this situation the plaintiff, on December 28, 1907, wrongfully and without justification, excuse, or probable cause, wantonly and maliciously procured and caused to be issued against defendant a temporary injunction restraining defendant from carrying out its openly declared purpose of removing its stock of liquors to its new place of business in Chattanooga; and in order to secure the issuance of the injunction the plaintiff wantonly and ma-

liciously represented, in its petition to the court, that defendant was insolvent and was removing all of its assets beyond the limits of this State. At the time plaintiff did not claim that anything was due to it for accrued rental of the leased premises; in fact the rental had been paid in advance to January 1, 1908. On January 4, 1908, plaintiff, on similar false and malicious representations as to its solvency and purpose, procured the appointment of a temporary receiver with directions to take charge of and hold the property and assets of defendant. The receiver, acting under such direction of the court, and at the instance and procurement of the plaintiff, took possession of the property and assets of the defendant within the jurisdiction of the court, and evicted defendant from the possession, use, and enjoyment of the leased premises. The receiver continued in such possession for several weeks, during which time defendant was excluded from the possession, use, and enjoyment of the leased premises or any part thereof. Upon the hearing the temporary receiver was discharged and the restraining order dissolved upon the ground that the defendant was not insolvent. This action on the part of the plaintiff amounted to eviction of the defendant from the leased premises, and released defendant from all obligation for the payment of further rent, if such obligation ever existed. A copy of the petition brought by plaintiff against defendant for an injunction was attached to defendant's answer in this case, the substance of which petition is: that the defendant is a tenant of the plaintiff, under the contract a copy of which is attached to the plaintiff's petition in the present case; that defendant is a Georgia corporation, and has declared its purpose to remove its business to Chattanooga, Tennessee, and to take from Georgia all of its assets of every character; and that if this should be done, defendant would be insolvent in this State and petitioner would be unable to collect its rents from defendant. The prayer was for injunction and receiver. A temporary restraining order was granted on December 28, 1907. On January 4, 1908, the plaintiff amended the petition by alleging the insolvency of defendant and that defendant had failed and refused to pay the installment of rent, $625, due plaintiff under the contract on January 1, 1908, and that defendant had announced its intention not to abide by the terms of the lease. The appointment of a receiver was prayed for all the

assets of defendant.  A temporary receiver was appointed on the day the amendment was made.

The defendant filed exceptions pendente lite to the overruling of its motion to dismiss the petition, as well as to the striking of its answer, and the disallowance of the amendments offered by it.  A verdict was rendered against the defendant, and its motion for a new trial was overruled.  Error is assigned upon the exceptions pendente lite and upon the refusal to grant a new trial.

*Wimbish & Ellis* and *Edgar Watkins,* for plaintiff in error.

*Moore & Pomeroy* and *Dorsey, Brewster, Howell & Heyman,* contra.

FISH, C. J.  (After stating the foregoing facts.)

1.  Upon a former hearing of the case, the petition was dismissed on general demurrer, but this ruling of the trial judge was reversed by this court.  *Goodrum Tobacco Co.* v. *Potts-Thompson Liquor Co.,* 133 *Ga.* 776 (66 S. E. 1081).  The written motion made by defendant, during the last trial, to dismiss the petition, was to the following effect:  (*a*) The action was for the recovery of four months' rental and for damages for a breach of the same contract under which the rental was alleged to be due, "such remedies being inconsistent and mutually exclusive;" (*b*) "that plaintiff in the same suit and in the same count is seeking to recover on its contract, treating the contract as existing and binding; and also seeking to recover for a breach of the same contract, treating said contract as breached and ended;" (*c*) "that while plaintiff claims damages for breach of contract, it nowhere sets up any facts showing any basis for measuring the damages;" (*d*) "that, the market rental value of the property leased not being alleged, plaintiff shows no right of action for any damage;" (*e*) "that so far as the plaintiff's suit is brought to recover on the contract, its recovery must be limited to the contract amount due and accrued prior to the filing of this suit."  These grounds of the motion did not make it one in the nature of a general demurrer which could be made on the trial, but they were in the nature of special demurrers, which could be filed only at the appearance term.

2.  The contract contained the following stipulations: "This lease [is] for a term of five years, commencing on the first day of October, 1906, and terminating on the last day of September, 1911, for the sum of $37,500, payable monthly in advance, to wit: $625,

and the said second party agrees to pay the same." "If the monthly rental, as herein specified, is not paid by second party for five days after same is due, first party, at its option, may declare this lease cancelled and void and take possession of said premises, time being expressly of the essence of this agreement." Accordingly the monthly rental was due upon the first day of each month, and under the contract the tenant was not entitled to wait until the fifth day of each month to pay the same. There was, therefore, a month's rent due on January 1, 1908. By exceptions to the striking of the portions of the defendant's answer and the disallowance of the amendments to the answer, the question is presented whether the taking possession of the leased premises by a receiver appointed at the instance of the plaintiff, under the circumstances stated, amounted to an eviction by the plaintiff of its tenant, the defendant; and if so, and the eviction was wrongful, whether the defendant could set up damages flowing therefrom to meet, by way of recoupment, the damages claimed by plaintiff for breach of the lease contract on the part of the defendant.

It must be conceded, of course, that the employment of legal proceedings for the collection of rentals that are due and unpaid, or for redress of breaches of the contract on the part of the tenant, will not necessarily affect the relation of landlord and tenant, or excuse the tenant from further performance of his obligations according to the contract under which he holds. A distraint for rent past due would not be a violation of the covenant for quiet enjoyment; nor would an action predicated upon a default or a violation of the contract by the tenant have that effect. In other words, it must be true, as a general rule, that a landlord may pursue the same legal remedies against his tenant, without prejudicing himself, as he could use if the relation of landlord and tenant did not exist. In Upton *v.* Townsend, 17 C. B. 51, it was said that the term " eviction " " may now be taken to mean this—not a mere trespass and nothing more, but something of a grave and permanent character, done by the landlord with the intention of depriving the tenant of the enjoyment of the demised premises." Practically the same definition of " eviction " was adopted by this court in *Fleming* v. *King,* 100 *Ga.* 449 (28 S. E. 239). In the present case it can not be said that there was an actual expulsion of the defendant from the rented premises by the plaintiff itself. Was the appointment of a

temporary receiver upon the application of the plaintiff, and the taking of possession of the leased premises by him under the order of the court and at the instance of the plaintiff, such an act, under the circumstances above set forth, as indicated an intention on the part of the plaintiff to deprive the defendant of the enjoyment of the rented premises? We think not. The evident purpose of the plaintiff in applying for the appointment of a receiver, taking the averments in the answer and offered amendments as true, was to secure its alleged rights and the payment of the rental claimed to be due it by the defendant. It merely sought to preserve the status until such rights could be legally determined. The appointment of the temporary receiver and the taking charge by him of the leased premises wherein the large stock of liquors owned by the defendant was stored, and where it transacted an extensive wholesale business, must have been with the same end in view. Of course, the receiver could not know that the judge upon the hearing would continue the receivership. He must have known that the removal of such a stock would involve much expense and great hazard of loss from breakage and other causes; and therefore it would seem that he acted prudently in keeping the stock where it was until it should be determined whether a permanent receivership would be granted. If the receiver pursued this course at the instance of the plaintiff, it certainly did not indicate an intention on the latter's part to resume any control of the leased premises and to deprive the defendant of the right to enjoy the same. The taking possession of the leased premises, under the circumstances, should therefore be held not to be an eviction of the defendant by the plaintiff, but merely an auxiliary measure frequently incident to the character of cases such as the one in which the receiver was appointed, for the purpose of preserving temporarily the status, and not with an intention on the part of the landlord, the plaintiff, that the tenant, the defendant, should no longer continue to hold the premises. It follows that the trial court did not err in striking that portion of the answer here dealt with, nor in disallowing the amendment. See Hayner *v.* Smith, 63 Ill. 430 (14 Am. R. 124); Morris *v.* Tillson, 81 Ill. 607; Keating *v.* Springer, 146 Ill. 481 (34 N. E. 805, 22 L. R. A. 544, 37 Am. St. R. 175); Barrett *v.* Boddie, 158 Ill. 479 (42 N. E. 143, 49 Am. St. R. 172); First National Bank *v.* Adam (Ill.), 25 N. E. 576; Bartlett *v.* Farrington,

120 Mass. 284; Skally *v.* Shute, 132 Mass. 367; Hayward *v.* Ramge, 33 Neb. 836. (51 N. W. 229).

3. In this same case (*Goodrum Tobacco Co.* v. *Potts-Thompson Co.,* 133 *Ga.* 776), it was held: "Though a lease contract provided ' that the purpose of this lease is for the operation by second party of a general retail liquor business,' the lessee is not absolved from paying the rent agreed to be paid because since the commencement of the lease the legislature enacted a law prohibiting the sale of alcoholic, spirituous, malt, or intoxicating liquors, and thus the demised tenement can not be thereafter used for the conduct of a liquor business, in the absence of a stipulation in the lease contract relieving the tenant from payment of rent accruing after the happening of such contingency." Of course, therefore, the court did not err in striking so much of the answer as sought to set up the same defense as had been previously ruled was not good.

4. In the amendments disallowed, the defendant set forth damages alleged to have been sustained by it on account .of the plaintiff's maliciously filing the petition for injunction and receiver, and falsely and maliciously and without probable cause alleging the insolvency of defendant. Such amendment was properly disallowed, the present action being purely one ex contractu, and the damages sought to be pleaded in the amendment being for an alleged independent tort on the part of the plaintiff against the defendant could not be set up in the absence of an allegation of the insolvency or non-residence of the plaintiff. Civil Code, § 5521; *Harden* v. *Lang,* 110 *Ga.* 392 (36 S. E. 100) ; *Ray* v. *Anderson,* 119 *Ga.* 926 (47 S. E. 205)

5. There was no effort whatever on the part of the plaintiff in error to brief the evidence. The so-called brief of evidence contains all the questions propounded to the various witnesses and their answers thereto, as well as colloquies between counsel and between them and the court, as well as entire copies of documents put in evidence. It follows, under numerous decisions of this court, that the assignments of error dependent for solution upon a consideration of the evidence will not be decided.

6. The above rulings control the case, and none of the assignments of error is sufficient to require a reversal.

*Judgment affirmed. All the Justices concur, except Hill, J., not presiding.*