[Civ. No. 1139.   First Appellate District.—February 13, 1913.]

## MARY A. BURKE, Executrix, Respondent, v. SAN FRANCISCO BREWERIES, LIMITED (a Corporation), Appellant.

LANDLORD AND TENANT—LEASE OF PREMISES FOR SALOON AND LODGING HOUSE—REFUSAL OF LIQUOR LICENSE TO TENANT.—Where a lease provides that the lessee shall not "directly or indirectly use or allow to be used the demised premises for any other purpose than that of a saloon and lodging house, without the written consent of the lessor," the subsequent refusal of the municipal authorities to renew the license to sell liquor on the premises is not available as a defense to an action for the rent; it not appearing that such refusal precludes the use of the property as a lodging house, or that the lessor has refused to allow the premises to be used for other than saloon purposes.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   E. P. Mogan, Judge.

The facts are stated in the opinion of the court.

Hoefler, Cook, Harwood & Morris, for Appellant.

Charles A. Shurtleff, and J. G. De Forest, for Respondent.

LENNON, P. J.—Frank H. Burke was the original plaintiff in this action.   After the action was commenced he died, and his wife, Mary A. Burke, as the executrix of his last will and testament, was substituted in his place and stead as plaintiff in the action.

In discussing this case, our references to the plaintiff will be understood as applying to the original plaintiff.

The action was brought for the recovery of the sum of one thousand two hundred and fifty dollars alleged to be due plaintiff from the defendant as rental under the terms of a written lease executed and dated January 3, 1908, whereby the defendant was granted the use and occupation of certain premises in the city and county of San Francisco for the term of five years at the total rental of seven thousand five hundred

dollars, which it was stipulated in the lease was to be paid in monthly installments of one hundred and twenty-five dollars.

Pursuant to the lease the defendant, upon the day and date of its execution, entered into possession of the demised premises, and paid the rent therefor as it became due save and except for the period commencing with the first day of August, 1909, and ending with the first day of June, 1910. The lease, among other things, provided, and the parties thereto expressly agreed that the defendant would not "directly or indirectly use or allow to be used the said premises for any other purpose than that of a saloon and lodging house, without the written consent of the lessor, or Madison & Burke, agents." The execution of the lease was not denied, but the answer of the defendant pleaded as a separate defense to the action a failure of consideration for the lease and the impossibility of complying with the terms thereof. In this behalf, the answer of the defendant alleged in substance that the defendant was, at the time of the execution of the lease and at all times thereafter, exclusively engaged in the business of manufacturing and selling beer; that the sole and only consideration for defendant's entering into the lease in question was to secure the leased premises for the purpose of conducting a saloon and selling beer manufactured by the defendant; that the charter and ordinance of the city and county of San Francisco, at the time of making the lease, and at the time of the commencement of the action, provided that no person should engage in the sale of liquor as a retail liquor dealer without first procuring a license therefor; that plaintiff and defendant at the time of entering into the lease knew of and contemplated the existing requirements of the charter and ordinance referred to; that on the thirtieth day of July, 1909, the board of police commissioners of the city and county of San Francisco refused and ever since has refused to grant a license to the defendant for the purpose of selling beer or liquor of any description on the leased premises, and that by reason thereof the consideration for the execution of the lease failed and the lease itself became impossible of performance.

The lower court granted plaintiff's motion to strike from the defendant's answer the special defense pleaded therein, upon the ground that it was sham and irrelevant, and that the facts stated therein did not constitute a defense to the action.

Upon the issues raised by the pleadings as they stood after the motion to strike out was granted the case was tried, and a judgment rendered and entered for the plaintiff, from which the defendant has appealed upon the judgment-roll alone.

Although counsel for the defendant have devoted considerable space to a discussion of the law relating generally to contracts made in contravention of public policy, the particular thing complained of and upon which they rely for a reversal of the judgment is not stated in their briefs. We apprehend, however, that the defendant is dissatisfied with the ruling of the lower court striking out parts of the answer, and that the only point involved upon the appeal is the correctness of that ruling.

This brings us to a consideration of the question as to whether or not the defendant was relieved from liability for the rent reserved in the lease for the remainder of the term granted merely because of the refusal of the municipal authorities to renew the license of the defendant to sell liquor in the demised premises. It is one of the contentions of the defendant that because the demised premises could not without violating the law be used by the defendant from and after the thirtieth day of July, 1909, for all of the purposes to which their use was limited by the terms of the lease, the lease from that date became impossible of performance by operation of law, and was no longer enforceable. It is further contended by defendant that the contract of lease was against public policy, and therefore void from its very inception. This latter contention is based upon the assumption that by the terms of the lease the defendant was obligated to continue for the period of five years in a business which might at any time after the execution of the lease be declared unlawful.

These contentions cannot be sustained. They are founded upon the rule of law that no recovery can be had by either party to a contract the performance of which involves the violation of an existing law. This rule of law has no application to the facts of the present case. The lease in question does not purport to require the performance of an act in contravention of an existing law. Nor can it be said that the parties to the lease, either expressly or impliedly, contracted for the termination of the lease in the event of a change in the law

which would render further performance of the lease impossible without violating the law.   On the contrary, it affirmatively appears from the allegations of the special defense relied upon that the defendant was compelled to discontinue the business of selling liquor, not because of a change in the law, but rather because of its application to the business of the defendant subsequent to the execution of the lease.   The defendant did not deny the allegation of the complaint that it had entered into the possession of the demised premises under the lease on the thirtieth day of July, 1908; and in this connection it will be noted that the special defense of the defendant as pleaded is evasive to the extent that it is silent as to whether or not the defendant occupied the premises as a saloon, under a license from the municipality, prior to July 30, 1909, the date upon which it is alleged a renewal of the defendant's license was refused.   That such was the fact, however, may be fairly inferred from the answer as a whole. No provision was made by the parties to the lease for its termination in the event of a failure of the defendant to secure a renewal of its license to sell liquor in the demised premises, and it cannot be fairly said that the terms of the lease can be construed to cover such a contingency.   The renewal of the defendant's license was not a matter within the control of the plaintiff.   That was a privilege which could be granted or withheld only by the municipality; and although a license had been granted to the defendant at or shortly after the execution of the lease the defendant had no assurance that such license would be renewed from time to time during the life of the lease.   This being so, the inference is irresistible that if the plaintiff and defendant had intended that the life of the lease should depend upon the renewal from time to time of the defendant's license to sell liquor in the demised premises a clause to that effect would have been inserted in the lease; and if it be conceded, as counsel for the defendant contend, that the plaintiff and defendant, when executing the lease, had in contemplation the possibility of the unfavorable application of the existing laws of the municipality, the conclusion must follow that the defendant, when it accepted the lease, assumed the risk that a renewal of the license to sell liquor might at any time be refused.

It has been repeatedly held that under such circumstances the refusal of the municipal authorities to renew a liquor license cannot be availed of as a defense to an action for the rent reserved and due under a lease. The rule in this behalf was succinctly stated in the case of *Burgett* v. *Loeb,* 43 Ind. App. 657, [88 N. E. 346]. In that case the action was for rent due under a lease which provided that the demised premises should be used during the term only for the purpose of conducting a saloon business. There the lessee, as a defense to the action, pleaded his inability to use the premises for the purpose designated in the lease, because of the rejection of his application for a license to sell liquor. In passing upon a demurrer which assailed the sufficiency of this defense the court said:

"It is the general rule that, where the performance of a contract becomes impossible subsequent to the making of the contract, the promisor is not thereby discharged. To this rule there is a well established exception, namely, where the performance becomes impossible by a change in the laws the promisor is discharged. The facts here presented do not bring the case at bar within the exception. The appellant did not discontinue his business because of a change in the law, but because of its application. At the time of entering into the contract, that he might subsequently, by the proper authorities, be denied a license, was a probability well known to him. (*Houston Ice & Brewing Co.* v. *Keenan,* 99 Tex. 79, [88 S. W. 197]; *San Antonio Brewing Assoc.* v. *Brents,* 39 Tex. Civ. App. 443, [88 S. W. 368]; *White* v. *Stuart,* 76 Va. 546.) With this knowledge, appellant made his terms unconditionally. He took the risk of being held liable for the rents even though performance became impossible by reason of circumstances beyond his control."

The general current of authority dealing with the subject under discussion is in substantial accord with the rule enunciated in the case last cited and quoted.

The cases dealing with the subject, either directly or upon principle, are many, among which may be cited the following: *Gaston* v. *Gordon,* 208 Mass. 265, [94 N. E. 307]; *Teller* v. *Boyle,* 132 Pa. 56, [18 Atl. 1069]; *Forster* v. *Eberle,* 7 Misc. Rep. 490, [27 N. Y. Supp. 986]; *Goodrum Tobacco Co.* v. *Potts etc.,* 133 Ga. 776, [26 L. R. A. (N. S.) 498, 66 S. E. 1081];

*Hecht* v. *Acme Coal Co.,* 19 Wyo. 18, [34 L. R. A. (N. S.) 773, 113 Pac. 788, 117 Pac. 132]; *Kerley* v. *Mayer,* 10 Misc. Rep. 718, [31 N. Y. Supp. 818]; *McLarren* v. *Spalding,* 2 Cal. 510.

The case of *Dunn* v. *Stegemann,* 10 Cal. App. 38, [101 Pac. 25], so strongly relied upon by the defendant, is not applicable to the facts of the case at bar. In that case the parties had knowingly entered into a contract for the letting of certain premises within one hundred and fifty feet of a church to be used as a saloon. A city ordinance provided that no saloon should be permitted or licensed within said one hundred and fifty feet; indeed the sale of liquor upon the demised premises would have been illegal with or without a license; and the court held that inasmuch as the parties to the lease had knowingly entered into a contract which had for its object a violation of the law such contract was void from its very inception and unenforceable by either party. No such question confonts us in the present case.

Aside from the questions already discussed, the special defense relied upon was deficient in failing to show that the defendant had ever requested permission, as provided in the lease, to use the premises for other than saloon purposes, or that the plaintiff had ever refused to allow the premises to be so used. Such defense was also deficient in failing to show that the refusal to renew the defendant's license in conjunction with the restriction of the lease had operated to deprive the defendant of the beneficial use of the demised premises. The refusal to renew the liquor license did not preclude the defendant from using the premises as a lodging house, and this was one of the purposes for which the lease provided the premises might be used. The case of *Teller* v. *Boyle,* 132 Pa. 56, [18 Atl. 1069], involved a similar situation. There the lease contained a provision that the demised premises should not be occupied save as a saloon and dwelling without the lessor's written consent; and the court, in holding that the lease was not terminated by the lessee's failure to obtain a liquor license, said: "If the lessor were insisting that his lessee should sell intoxicating liquors, and claiming the right to forfeit the lease because he refused to comply, it would doubtless be a good defense to say that he was forbidden by law to sell, but that is not this case."

For the reasons stated, we are of the opinion that the order striking out parts of the defendant's answer was rightfully made, and it is therefore ordered that the judgment appealed from be affirmed.

Hall, J., and Murphey, J., *pro tem.,* concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 11, 1913.